UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

*ex. rel.* MARTIN T. GIRLING, D.P.M.,

       Relator,

v.

SPECIALIST DOCTORS' GROUP, LLC,

       Defendant.

Case No.  8:17-cv-2647-T-24 JSS

_____/

## **ORDER**

     This cause comes before the Court on Defendant's Motion to Dismiss.  (Doc. No. 29).

Relator opposes the motion.  (Doc. No. 34; Doc. No. S-36).  As explained below, the motion is

granted.  However, the Court will grant Relator leave to amend.

## **I.  Standard of Review**

     In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

(citation omitted).  While the Court must assume that all of the allegations in the complaint are

true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Relator Martin T. Girling, D.P.M. alleges the following in his amended complaint (Doc. No. 21): Relator is a podiatrist who sold his practice to Defendant, Specialist Doctors' Group, LLC, in November of 2010.  Following the sale of his practice, Relator worked for Defendant as a contract employee until June of 2017.  As a contractor, Relator was not involved in the billing and coding aspects of the practice; instead, he treated patients and recorded the types of services that he provided to the patients.

In recording the services that he provided to patients, Relator used Defendant's preprinted form known as a "superbill."  On the superbill, Relator would mark the services that he had performed, which had a corresponding CPT code.[1]  After Relator filled out a superbill for a patient, Defendant would scan the superbill into its billing system and use it to generate patient bills.

One set of CPT codes of particular relevance to this lawsuit are the CPT codes for evaluation and management ("E/M") services.  New patient E/M services are billed under CPT codes 99201 through 99205.  Established patient E/M services are billed under CPT codes 99211 through 99215.  Determining which CPT code to bill for E/M services depends on the

---

[1] CPT codes are numbers assigned to every service that a medical practitioner may provide.  The CPT codes are used by Medicare to determine the amount of reimbursement it will pay for a particular service.

complexity of the treatment and patient interaction, with the more complex treatment and interaction being given a higher CPT code and a higher reimbursement rate.  According to Relator, unscrupulous providers may perform a straightforward E/M service, but bill at a higher CPT code to increase their profitability.

Another way unscrupulous providers can increase their profitability is through the improper use of modifiers, which expand the description of what services were provided.  For example, Modifier 25 is used to report an E/M service performed on the same day as an additional procedure.  However, Modifier 25 should only be used if the E/M service is significant and separately identifiable from the additional procedure.

During the later years that Relator worked for Defendant, patients reached out to Relator and complained about discrepancies and irregularities in their billing statements.  In response, Relator reviewed Defendant's billings generated during the 2014 through 2017 timeframe, and that review suggested to Relator that Defendant had been overbilling patients on a widespread basis during those years.

Relator's review consisted of comparing patient superbills that reflected the actual services performed with the information contained in Defendant's billing system.  Relator contends that he discovered three types of overbilling by Defendant: (1) Defendant was fraudulently upcoding E/M services (*i.e.,* Defendant used a higher CPT code than appropriate); (2) Defendant was fraudulently billing patients for E/M services that were never rendered; and (3) Defendant was improperly utilizing Modifier 25 to enable billing when no billing should have been done.  Relator contends this overbilling was not accidental; instead, Defendant devised a scheme to submit false claims for its own financial enrichment.  Relator contends that Defendant perpetrated this scheme by using doctors who worked on a contract basis and who

3

were not actively involved in billing.  This allowed Defendant to inflate its claims and deceive government payers without either side becoming aware.

Relator gives twelve examples of Medicare patients who were allegedly overbilled. Specifically, within the amended complaint and the sealed supplemental filing, Relator identifies the date that each Medicare patient was seen by Relator or another doctor, the patient's name, the services performed by the doctor and marked on the superbill with the corresponding CPT code, and the CPT code contained in Defendant's billing system for each patient for that date of service.  The allegations and supplemental filing purport to show that: (1) Defendant fraudulently billed eight of these Medicare patients[2] for E/M services when no E/M services were rendered; and (2) Defendant fraudulently upcoded the E/M services billed to four of these Medicare patients[3].  It does not appear that Relator included any examples of Defendant's allegedly improper use of Modifier 25.

Additionally, Relator contends that he reviewed CMS's public database[4] that documents the services and procedures provided to Medicare patients, and the database revealed that in 2014 and 2015, all E/M visits for Defendant's established patients (totaling 1,489 visits in 2014 and 1,809 in 2015) were coded to 99214; no visits were coded to the lower codes of 99211, 99212, or 99213 during those years.  Relator contends that it would be nearly impossible for all established patients to have had complex E/M services provided to them, and therefore, this data is indicative of systematic fraud and corroborates Relator's allegation that Defendant had been overbilling Medicare patients.

---

[2] Patients 1-5, and 8-10
[3] Patients 6, 7, 11, and 12
[4] CMS refers to the Centers for Medicare and Medicaid Services, which is directly responsible for the administration of the Medicare program.

As a result, Relator filed this lawsuit and asserts two claims against Defendant under the False Claims Act ("FCA").[5]   First, Relator alleges that Defendant violated 31 U.S.C. §3729(a)(1)(A) by presenting false claims for payment to the government.   Second, Relator alleges that Defendant violated 31 U.S.C. §3729(a)(1)(B) by making or using a false record or statement material to a false claim.   In response, Defendant moves to dismiss both claims.

### III.  Motion to Dismiss

In the instant motion, Defendant moves for dismissal of the complaint, arguing that Plaintiff's claims are not sufficiently pled with particularity and with some indicia of reliability. Federal Rule of Civil Procedure 9(b) applies to FCA fraud claims.  U.S. ex rel. Mastej v. Health Management Associates, Inc., 591 Fed. Appx. 693, 703 (11th Cir. 2014).  This heightened pleading standard in the context of FCA claims requires the following:

> An FCA complaint must therefore "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." An FCA complaint "satisfies Rule 9(b) if it sets forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."

> Because the submission of an actual claim to the government for payment is "the *sine qua non*" of an FCA violation, a plaintiff-relator must "plead the submission of a false claim with particularity." To do so, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result."

> Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments *must have been submitted, were likely submitted or should have been submitted to the Government*." Instead, "some indicia of

---

[5] The Government has decided not to intervene in this case.  (Doc. No. 17).

reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government."

[Courts] evaluate[] "whether the allegations of a complaint contain sufficient indicia of reliability to satisfy Rule 9(b) on a case-by-case basis." Providing exact billing data—name, date, amount, and services rendered-or attaching a representative sample claim is one way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted. However, there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim. Under [the Eleventh's Circuit's] nuanced, case-by-case approach, other means are available to present the required indicia of reliability that a false claim was actually submitted. Although there are no bright-line rules, our case law has indicated that a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants may have a sufficient basis for asserting that the defendants actually submitted false claims.

By contrast, a plaintiff-relator without first-hand knowledge of the defendants' billing practices is unlikely to have a sufficient basis for such an allegation. . . . At a minimum, a plaintiff-relator must explain the basis for her assertion that fraudulent claims were actually submitted. It is not enough for the plaintiff-relator to state baldly that he was aware of the defendants' billing practices, to base his knowledge on rumors, or to offer only conjecture about the source of his knowledge.

Id. at 703-05 (internal citations omitted). "Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim—the possibility of recovering between fifteen and thirty percent of a treble damages award—does not precipitate the filing of frivolous suits." See U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360 (11th Cir. 2006). Accordingly, the Court will analyze the sufficiency of the allegations for each of Relator's claims.

### A.  § 3729(a)(1)(A)—the Presentment Claim

In Count I, Relator contends that Defendant violated 31 U.S.C. §3729(a)(1)(A), which makes it unlawful to knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval by the government.  In order to state a claim under § 3729(a)(1)(A), a relator must allege three things: (1) a false or fraudulent claim, (2) which was presented, or

6

caused to be presented, for payment or approval by the government, (3) with the knowledge that the claim was false.  United States ex rel. Phalp v. Lincare Holdings, Inc., 857 F.3d 1148, 1154 (11th Cir. 2017).  This claim is based on Relator's allegations that Defendant overbilled Medicare in three ways: (1) by fraudulently upcoding E/M services; (2) by fraudulently billing patients for E/M services that were never rendered; and (3) by improperly utilizing Modifier 25 to enable billing when no billing should have been done.

Defendant argues that this claim should be dismissed, because it is not pled with particularity and the allegations lack an indicia of reliability.  Defendant points out that Relator fails to allege any facts regarding the actual submission of any specific claim for payment to the government.  The Court agrees that this omission is fatal to Relator's claim.

The case of U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc., 290 F.3d 1301 (11th Cir. 2002), is instructive.  In Clausen, the relator set forth detailed factual allegations regarding the defendant's allegedly fraudulent scheme of doing medically unnecessary tests and/or testing not done at the direction of the patients' doctors.  See id. at 1303.  After setting forth the alleged fraudulent scheme, the relator alleged that the scheme resulted in the submission of false claims to the government.  See id. at 1306.

The district court dismissed the relator's second amended complaint, finding that the relator failed to sufficiently allege a single fraudulent claim that was submitted to the government.  See id. at 1307.  On appeal, the appellate court affirmed, stating the following:

> The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe. Without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act.  The submission of a claim is

thus not . . . a "ministerial act," but the *sine qua non* of a False Claims Act violation.

As such, Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government. . . . [I]f Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government.

In reviewing [the relator's] complaints and taking their allegations as true, we agree with the district court that [the relator's] failure to allege with any specificity if—or when—any actual improper claims were submitted to the Government is indeed fatal to his complaints under the particular circumstances of this case. . . . [The relator may have made allegations of a fraudulent scheme that] set the stage for the consummation of this alleged nefarious plot to recover unjustified amounts of taxpayer money. But, as to the plot's execution, [the relator] merely offers conclusory statements, and does not adequately allege when—or even if—the schemes were brought to fruition. He merely alleged that "these practices resulted in the submission of false claims for payment to the United States." No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described . . . . No copy of a single bill or payment was provided.

Id. at 1311-12 (internal citations omitted).

The instant case is similar to Clausen in that Relator sufficiently alleges a scheme of upcoding E/M services and/or including CPT codes in Defendant's billing system for E/M services that were never rendered.[6] However, Relator fails to allege with particularity that the fraudulent billing resulted in false claims that were submitted to the Government.[7] See Corsello

---

[6] Relator fails to sufficiently allege with particularity a scheme to improperly utilize Modifier 25, as none of the patient examples involved the improper use of Modifier 25.

[7] The Court realizes the difficulties this standard imposes and finds the dissenting opinion in Clausen persuasive and applicable to this case. See Clausen, 290 F.3d at 1317 (stating that Rule 9(b) does not require a plaintiff to actually prove his allegations; also stating that the relator's "allegations regarding billing would appear to be mere conjecture only if [the appellate court was] willing to attribute to [the defendant] a highly unusual business model that consisted in

8

v. Lincare, Inc., 428 F.3d 1008, 1013 (11th Cir. 2005)(stating that "[b]ecause it is the submission

of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must

be pleaded with particularity and not inferred from the circumstances").

     This case is also similar to Atkins, in which the relator-doctor asserted an FCA claim

based on the defendants billing for services that were not rendered or were improperly upcoded.

See Atkins, 470 F.3d at 1354.  In affirming the district court's dismissal of the FCA claim, the

appellate court stated the following:

> [T]he complaint fails rule 9(b) for want of sufficient indicia of
> reliability to support the assertion that the defendants submitted
> false claims. . . . [The relator] has described in detail what he
> believes is an elaborate scheme for defrauding the government by
> submitting false claims. He cites particular patients, dates and
> corresponding medical records for services that he contends were
> not eligible for government reimbursement. . . . [The relator] fails to
> provide the next link in the FCA liability chain: showing that the
> defendants *actually submitted* reimbursement claims for the services
> he describes. Instead, he portrays the scheme and then summarily
> concludes that the defendants submitted false claims to the
> government for reimbursement.
>
> In his complaint, [the relator] does not profess to have firsthand
> knowledge of the defendants' submission of false claims. He is a
> psychiatrist responsible for the provision of medical care, not a
> billing and coding administrator responsible for filing and
> submitting the defendants' claims for reimbursement.

Id.at 1358-59.  Likewise, in the instant case, Relator is a doctor, and he concedes that he is not

involved in Defendant's billing.  (Doc. No. 21, ¶ 21).  Thus, Relator has not set forth a basis for

his assertion that Defendant actually submitted false claims to the government for payment.

---

arranging for the systematic administration of medically unnecessary tests for which it never
intended to be paid" and stating that there is "nothing alarmingly conjectural about [the relator's]
allegation that [the defendant] billed for the allegedly unnecessary tests it methodically took the
trouble to order").  However, the dissenting opinion does not represent the law in the Eleventh
Circuit, by which this Court is bound.

Accordingly, the Court finds that Relator has not sufficiently alleged that Defendant violated 31 U.S.C. §3729(a)(1)(A) of the FCA.  However, the Court will grant Relator leave to amend his complaint in order to allege with particularity the basis for his contention that false claims were actually submitted to the government for payment.[8]

### B.  § 3729(a)(1)(B)—the False Records Claim

In Count II, Relator contends that Defendant violated 31 U.S.C. §3729(a)(1)(B), which makes it unlawful to knowingly make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim.  In order to state a claim under § 3729(a)(1)(B), a relator must allege that: "(1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim."  Phalp, 857 F.3d at 1154.

Relator bases this claim on the same conduct that forms the basis for Count I—that Defendant overbilled Medicare by upcoding E/M services and by billing for E/M services that were never rendered.[9]  Thus, the alleged false records or statements are the false assertions regarding the provision of E/M services.  However, Relator fails to allege facts showing that the false statements were material to a false claim, as the Court has found that Relator has not sufficiently alleged the existence of a false claim that was submitted to the government. By failing to connect the alleged false statements to an actual false claim that was submitted to the

---

[8] Perhaps one way that Relator might be able to meet this requirement is to attach the Medicare Explanation of Benefits ("EOB") for the patients described in the complaint if those EOBs set forth the services for which Medicare was billed by Defendant for those particular dates of service described in the complaint.

[9] As previously noted, Relator fails to sufficiently allege with particularity a scheme to improperly utilize Modifier 25, as none of the patient examples involved the improper use of Modifier 25.

government, Defendant's alleged false statements cannot be material to a false claim.[10]  See U.S. ex rel. Childress v. Ocala Heart Institute, Inc., 2015 WL 10742765, at *3 (M.D. Fla. Nov. 23, 2015)(dismissing claim of § 3729(a)(1)(B) due to the failure to allege the submission of a false claim).  As such, this claim must be dismissed.

The Court will grant Relator leave to amend this claim.  However, in doing so, Relator should be mindful that § 3729(a)(1)(A) and (B) provide distinct theories of liability, and therefore, Relator must tailor the facts alleged in Counts I and II to support the specific elements of those claims.  See United States ex rel. Sharpe v. Americare Ambulance, 2017 WL 2840574, at *7 (M.D. Fla. July 3, 2017).

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)      Defendant's Motion to Dismiss (Doc. No. 29) is **GRANTED**.

(2)      Plaintiff may file a second amended complaint by ***October 13, 2020***.

DONE AND ORDERED at Tampa, Florida, this 29th day of September, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record

---

[10] The Court is cognizant that claims under 31 U.S.C. § 3729(a)(1)(B) do not require that a relator make allegations about the purported submission of false claims to the government, because that subsection of the FCA does not contain the same "presentment" clause found in 31 U.S.C. § 3729(a)(1)(A).  See United States ex rel. George v. Fresenius Medical Care Holdings, Inc., 2014 WL 12607797, at *4 (N. D. Ala.  Mar. 31, 2014).  However, a relator must still plead a connection between the alleged false record or statement and an actual claim made to the government.  See United States ex rel. Strubbe v. Crawford County Memorial Hospital, 915 F.3d 1158, 1166 (8th Cir. 2019).