UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

*ex. rel.* MARTIN T. GIRLING, D.P.M.,

      Relator,

v.
                                 Case No.  8:17-cv-2647-T-24 JSS

SPECIALIST DOCTORS' GROUP, LLC,

      Defendant.

_____/

**ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss.  (Doc. No. 49).

Relator opposes the motion.  (Doc. No. 53; Doc. No. S-52).  As explained below, the motion is

denied.[1]

**I.  Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

_____

[1] Defendant also filed a motion to file a reply brief (Doc. No. 56), but the Court finds that a reply
is not necessary and denies the motion.

555 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Relator Martin T. Girling, D.P.M. alleges the following in his second amended complaint (Doc. No. 47): Relator is a podiatrist who sold his practice to Defendant, Specialist Doctors' Group, LLC, in November of 2010.  Following the sale of his practice, Relator worked for Defendant as a contract employee until June of 2017.

When Relator treated patients, he recorded the types of services that he provided to the patients on Defendant's preprinted form known as a "superbill."  Specifically, on the superbill, Relator would mark the CPT code that corresponded with the services that he had performed.[2] After Relator filled out a superbill for a patient, the superbill was entered into Defendant's billing system and used to generate patient bills.  Relator did not submit insurance claims, but he did work closely with the billing department and conferred with them regularly regarding the superbills that he filled out reflecting patient treatment.

---

[2] CPT codes are numbers assigned to every service that a medical practitioner may provide.  The CPT codes are used by Medicare to determine the amount of reimbursement it will pay for a particular service.

2

One set of CPT codes of particular relevance to this lawsuit are the CPT codes for evaluation and management ("E/M") services. New patient E/M services are billed under CPT codes 99201 through 99205. Established patient E/M services are billed under CPT codes 99211 through 99215. Determining which CPT code to bill for E/M services depends on the complexity of the treatment and patient interaction, with the more complex treatment and interaction being given a higher CPT code and a higher reimbursement rate. According to Relator, unscrupulous providers may perform a straightforward E/M service, but bill at a higher CPT code to increase their profitability.

Another way unscrupulous providers can increase their profitability is through the improper use of modifiers, which expand the description of what services were provided. For example, Modifier 25 is used to report an E/M service performed on the same day as an additional procedure. However, Modifier 25 should only be used if the E/M service is significant and separately identifiable from the additional procedure.

During the later years that Relator worked for Defendant, patients reached out to Relator and complained about discrepancies and irregularities in their billing statements. In response, Relator reviewed Defendant's billings generated during the 2014 through 2017 timeframe, and that review suggested to Relator that Defendant had been overbilling patients on a widespread basis during those years.

Relator's review consisted of comparing patient superbills that reflected the actual services performed with the information contained in Defendant's billing system. Relator contends that he discovered three types of overbilling by Defendant: (1) Defendant was fraudulently upcoding E/M services (*i.e.,* Defendant used a higher CPT code than appropriate); (2) Defendant was fraudulently billing patients for E/M services that were never rendered; and

3

(3) Defendant was improperly utilizing Modifier 25 to enable billing when no billing should have been done.  Relator contends this overbilling was not accidental; instead, Defendant devised a scheme to submit false claims for its own financial enrichment.  Relator contends that Defendant perpetrated this scheme by using doctors who worked on a contract basis and who were not actively involved in submitting bills to insurance.  This allowed Defendant to inflate its claims and deceive government payers without either side becoming aware.

Relator gives eight examples of Medicare patients who were allegedly overbilled. Specifically, within the second amended complaint and the sealed supplemental filing, Relator identifies: (1) the date that each Medicare patient was seen by Relator or another doctor, (2) the patient's name, (3) the services performed by the doctor and marked on the superbill with the corresponding CPT codes, (4) the CPT codes contained in Defendant's billing system for each patient for that date of service (which differed from the superbill), (5) the date that each billing claim was submitted to Medicare, (6) the CPT codes used to support the billing claims submitted to Medicare, (7) the amounts Defendant billed Medicare, (8) the amounts that Medicare paid Defendant for each patient (broken down by CPT code), and (9) the date of each Medicare payment, along with the check number for each payment.

These patient examples support Relator's contention that: (1) Defendant fraudulently billed Medicare for E/M services when no E/M services were rendered;[3] (2) Defendant fraudulently upcoded E/M services billed to Medicare;[4] and (3) Defendant improperly used Modifier 25 to bill Medicare for E/M services when Defendant should not have done so based on the patient's visit.[5]  The supplemental sealed filing supports Relator's contention that Defendant

---

[3] Patients 3 and 4
[4] Patient 8
[5] Patients 2, 5, and 6

did, in fact, bill Medicare in the manner alleged and that Medicare paid Defendant for these allegedly false claims.

Additionally, Relator contends that he reviewed CMS's public database[6] that documents the services and procedures provided to Medicare patients, and the database revealed that in 2014 and 2015, all E/M visits for Defendant's established patients (totaling 1,489 visits in 2014 and 1,809 in 2015) were coded to 99214; no visits were coded to the lower codes of 99211, 99212, or 99213 during those years. Relator contends that it would be nearly impossible for all established patients to have had complex E/M services provided to them, and therefore, this data is indicative of systematic fraud and corroborates his allegation that Defendant had been overbilling Medicare patients.

As a result, Relator filed this lawsuit and asserts two claims against Defendant under the False Claims Act ("FCA").[7] First, Relator alleges that Defendant violated 31 U.S.C. §3729(a)(1)(A) by presenting false claims for payment to the government. Second, Relator alleges that Defendant violated 31 U.S.C. §3729(a)(1)(B) by making or using a false record or statement material to a false claim. In response, Defendant moves to dismiss both claims.

## III.  Motion to Dismiss

In the instant motion, Defendant moves for dismissal of the second amended complaint, arguing that: (1) Relator's claims are barred by the public disclosure bar; and (2) Relator's claims are not sufficiently pled. As explained below, the Court rejects both arguments.

---

[6] CMS refers to the Centers for Medicare and Medicaid Services, which is directly responsible for the administration of the Medicare program.

[7] The Government has decided not to intervene in this case. (Doc. No. 17).

## A.  Public Disclosure Bar

Defendant argues that Relator's claims are barred by the public disclosure bar set forth in

31 U.S.C. § 3730(e).  The public disclosure bar provides, in relevant part, the following:

> (4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . in a . . . Federal report, . . . unless . . . the person bringing the action is an original source of the information.
> (B) For purposes of this paragraph, "original source" means an individual . . . who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e).

Defendant argues that Relator's claims are based, in part, on data from a federal report,

*i.e.,* the CMS's public database.  The data from the CMS's public database shows that in 2014

and 2015, all E/M visits for Defendant's established patients were coded to 99214; no visits were

coded to the lower codes of 99211, 99212, or 99213 during those years.  Relator has alleged that

this data is indicative of systematic fraud and corroborates his allegation that Defendant had been

overbilling Medicare patients.

In order to determine if the public disclosure bar applies, the Court employs a three-part

inquiry.  See U.S. ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 812 (11th Cir. 2015).  First,

the Court determines whether the allegations or transactions at issue were publicly disclosed by

one of the sources identified in the statute.  See id.  Second, the Court determines whether

Relator's allegations are substantially the same as the publicly disclosed allegations or

transactions.  See id. at 814.  Third, the Court determines whether Relator is an original source of

the information in the second amended complaint.  See id.

The Court assumes for the purposes of this motion that the first two elements are met—that the data from the CMS database is a federal report that disclosed the possibility of Defendant's upcoding fraud and that Relator's allegations are substantially the same.  The Court finds, however, that the public disclosure bar does not apply, because Relator is an original source of the information contained in the second amended complaint.

Under the statute, an original source is someone "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions."[8]  31 U.S.C. § 3730(e)(4)(B).  The purpose of the original source exception is to "'ensure that *qui tam* actions based *solely* on public disclosures could not be brought by individuals that had no direct or independent knowledge of the information.'"  Cooper v. Blue Cross and Blue Shield of Fla., Inc., 19 F.3d 562, 568 n.10 (11th Cir. 1994)(citation omitted).

Relator's allegations show that he has knowledge that is independent of and materially adds to the publicly disclosed data.  Specifically, Relator was directly involved in the treatment that was the basis for Defendant's allegedly fraudulent billings to Medicare.  Relator recorded the services that he provided to Defendant's patients on the superbills, and he is in the unique position to know that the services for which Defendant billed Medicare were not performed, as he would have been the one who had performed the services.  In order to prove that the publicly disclosed information included false claims submitted by Defendant, one would need to be able to prove the true facts—i.e., the actual services rendered.  Relator's direct, independent

---

[8] The Eleventh Circuit has interpreted this to mean that "'a plaintiff need not establish [himself] as *the* original source of the publicly disclosed information but must establish that [he] is *an* original source of the information in that [he] had direct and independent knowledge of the information on which [he] is basing [his] FCA claim.'"  McElmurray v. Consolidated Government of Augusta-Richmond County, 501 F.3d 1244, 1253–54 (11th Cir. 2007)(quoting Battle v. Board of Regents for Georgia, 468 F.3d 755, 762 (11th Cir. 2006)).

knowledge provides that essential link necessary to prove the submission of false claims and/or use of false records.  Accordingly, the Court denies Defendant's motion to the extent that it is based on the public disclosure bar.

### B.  Sufficiency of the Allegations

Next, Defendant moves for dismissal, arguing that Relator's claims are not sufficiently pled.  Federal Rule of Civil Procedure 9(b) applies to FCA fraud claims.  U.S. ex rel. Mastej v. Health Management Associates, Inc., 591 Fed. Appx. 693, 703 (11th Cir. 2014).  This heightened pleading standard in the context of FCA claims requires the following:

> An FCA complaint must therefore "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." An FCA complaint "satisfies Rule 9(b) if it sets forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."

> Because the submission of an actual claim to the government for payment is "the *sine qua non*" of an FCA violation, a plaintiff-relator must "plead the submission of a false claim with particularity." To do so, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result."

> Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments *must have been submitted, were likely submitted or should have been submitted to the Government*." Instead, "some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government."

> [Courts] evaluate[] "whether the allegations of a complaint contain sufficient indicia of reliability to satisfy Rule 9(b) on a case-by-case basis." Providing exact billing data—name, date, amount, and services rendered-or attaching a representative sample claim is one

way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted. However, there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim. Under [the Eleventh's Circuit's] nuanced, case-by-case approach, other means are available to present the required indicia of reliability that a false claim was actually submitted. Although there are no bright-line rules, our case law has indicated that a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through [his] employment with the defendants may have a sufficient basis for asserting that the defendants actually submitted false claims.

By contrast, a plaintiff-relator without first-hand knowledge of the defendants' billing practices is unlikely to have a sufficient basis for such an allegation. . . . At a minimum, a plaintiff-relator must explain the basis for [his] assertion that fraudulent claims were actually submitted. It is not enough for the plaintiff-relator to state baldly that he was aware of the defendants' billing practices, to base his knowledge on rumors, or to offer only conjecture about the source of his knowledge.

Id. at 703-05 (internal citations omitted).  "Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim—the possibility of recovering between fifteen and thirty percent of a treble damages award—does not precipitate the filing of frivolous suits."  See U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360 (11th Cir. 2006).

In this case, Relator asserts two claims.  First, Relator alleges that Defendant violated 31 U.S.C. §3729(a)(1)(A) by presenting false claims for payment to the government.  Second, Relator alleges that Defendant violated 31 U.S.C. §3729(a)(1)(B) by making or using a false record or statement material to a false claim.  Defendant argues that these claims are not sufficiently pled, because: (1) Relator does not sufficiently allege scienter; and (2) Relator does not allege his claims with sufficient particularity.  The Court addresses these arguments below.

### 1.  Scienter

Defendant argues that Relator's claims should  be dismissed, because Relator does not sufficiently allege scienter.  In order to state his claims, Relator must allege that Defendant

submitted a false claim with knowledge of its falsity (Count I) and that Defendant made (or caused to be made) a false statement with knowledge of its falsity (Count II).  See U.S. ex rel. Phalp v. Lincare Holdings, Inc., 857 F.3d 1148, 1154 (11th Cir. 2017).

"For liability to attach, the relator must show that the defendant acted 'knowingly,' which the [FCA] defines as either 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard.' Although proof of a 'specific intent to defraud' is not required, the statute's language makes plain that liability does not attach to innocent mistakes or simple negligence."  Urquilla-Diaz v. Kaplan University, 780 F.3d 1039, 1058 (11th Cir. 2015)(internal citations omitted).

Rule 9(b) provides that knowledge may be alleged generally.  See id.at 1051.  A review of Relator's allegations regarding Defendant's knowledge shows that he meets this standard. Relator has alleged that he marked the services that he provided to Defendant's patients on each superbill that was uploaded into Defendant's billing system.  The CPT codes on the superbills did not match the codes Defendant used to bill Medicare. Relator alleges this overbilling was not accidental; instead, Relator contends that Defendant devised a scheme to submit false claims to Medicare for its own financial enrichment.  The Court finds that these allegations are sufficient and denies Defendant's motion on this issue.

### 2.  Particularity

Next, Defendant argues that Relator's claims should  be dismissed, because Relator does not allege his claims with sufficient particularity.   This argument has no merit.

Relator's second amended complaint and supplemental filing describe a fraudulent scheme by Defendant to overbill Medicare.  To support his claims, Relator provides patient examples that show: (1) the date that each Medicare patient was seen by Relator or another doctor, (2) the patient's name, (3) the services performed by the doctor and marked on the

superbill with the corresponding CPT codes, (4) the CPT codes contained in Defendant's billing system for each patient for that date of service (which differed from the superbills), (5) the date that each billing claim was submitted to Medicare, (6) the CPT codes used to support the billing claims submitted to Medicare, (7) the amounts Defendant billed Medicare, (8) the amounts that Medicare paid Defendant for each patient (broken down by CPT code), and (9) the date of each Medicare payment, along with the check number for each payment.  These patient examples support Relator's contention that: (1) Defendant fraudulently billed Medicare for E/M services when no E/M services were rendered; (2) Defendant fraudulently upcoded E/M services billed to Medicare; and (3) Defendant improperly used Modifier 25 to bill Medicare for E/M services when Defendant should not have done so based on the patient's visit.

Despite this detail, Defendant argues that Relator's claims should be dismissed because Relator "does not allege facts regarding who signed or submitted any claims, where the submission took place, what form was used, how the claim was submitted for reimbursement, and any billing number associated with any claim submitted in his representative sample."  (Doc. No. 49. p. 10).  Defendant, however, does not explain how those facts have any bearing on the ultimate issues in this case—whether Defendant submitted a false claim for reimbursement and/or whether Defendant made or used a false record or statement material to a false claim. Therefore, the Court denies Defendant's motion to dismiss to the extent that it is based on lack of particularity.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)    Defendant's Motion to Dismiss (Doc. No. 49) is **DENIED**.

(2)    Defendant's Motion to File a Reply (Doc. No. 56) is **DENIED**.

(3)      Defendant's Motion to Stay Discovery Pending Ruling on Motion to Dismiss

(Doc. No. 50) is **DENIED AS MOOT.**

DONE AND ORDERED at Tampa, Florida, this 7th day of December, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record